UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Siemens Gamesa Renewable Energy, Inc., <br><br> Plaintiff, <br><br> v. <br><br> RiverCap Ventures, Inc., RiverCap Holdings, LLC, Canvus, Inc., Noblewins LLC, Brian Donahue, an individual, Alexander G. Kowalski, an individual, Cory Johnson, an individual. <br><br> Defendants. | Case No. 1:25-cv-00057 |

## COMPLAINT

Plaintiff, Siemens Gamesa Renewable Energy, Inc. ("**SGRE**"), by and through its undersigned counsel, hereby brings this Complaint against Defendants, and in support thereof alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff SGRE is a Delaware corporation with its principal place of business in Orlando, Florida. SGRE is a citizen of Delaware and Florida.

2. Defendant RiverCap Ventures, Inc. ("**RiverCap**") is an Ohio for-profit corporation with its principal place of business in Rocky River, Ohio. Accordingly, RiverCap is a citizen of Ohio.

3. Defendant RiverCap Holdings, LLC ("**RiverCap Holdings**") is an Ohio limited liability company with its principal place of business in Rocky River, Ohio. RiverCap Holdings has five members: (1) Alex Kowalski, an individual domiciled in Ohio and, therefore, a citizen of Ohio; (2) Miguel Zubizarreta, an individual domiciled in Ohio and, therefore, a citizen of Ohio;

1

(3) John O'Brien, an individual domiciled in California and, therefore, a citizen of California; (4) Dave Griffiths, an individual domiciled in Ohio and, therefore, a citizen of Ohio; and (5) Mike Bornhorst, an individual domiciled in Ohio and, therefore, a citizen of Ohio. Accordingly, RiverCap Holdings is a citizen of Ohio and California.

4. Defendant Canvus, Inc. ("**Canvus**") is an Ohio for-profit corporation with its principal place of business in Rocky River, Ohio. Accordingly, Canvus is a citizen of Ohio.

5. Defendant Noblewins LLC ("**Noblewins**") is an Ohio limited liability company with its principal place of business in Rocky River, Ohio. Brian Donahue, who is domiciled in Ohio, is a member of Noblewins. Upon information and belief, there are no other members of Noblewins. Accordingly, Noblewins is a citizen of Ohio.

6. Defendant Brian Donahue ("**Donahue**") is an individual domiciled in Ohio and, therefore, is a citizen of Ohio.

7. Defendant Alexander G. Kowalski ("**Kowalski**") is an individual domiciled in Ohio and, therefore, is a citizen of Ohio.

8. Defendant Cory Johnson ("**Johnson**") is an individual domiciled in Ohio, and therefore, is a citizen of Ohio.

9. Jurisdiction is proper under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff, a citizen of Delaware and Florida, and Defendants, citizens of Ohio and California, and the amount in controversy exceeds $75,000.00 in value, exclusive of costs and interest.

10. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this District and the Defendants reside in Ohio.

11. This Court has personal jurisdiction over Defendants because Defendants Donahue, Kowalski, and Johnson are domiciled in Ohio and Defendants Canvus, Noblewins, RiverCap, and RiverCap Holdings have their principal place of business in Ohio, transact business in Ohio, and are organized and/or incorporated under the laws of Ohio.

## GENERAL ALLEGATIONS

**I.      The Master Services Agreements and RiverCap's Material Breaches.**

12. On April 8, 2019, SGRE and RiverCap, formerly known as ExchangeBase, LLC, entered into a Master Services Agreement (the "**2019 Agreement**") under which, and pursuant to separate purchase orders issued by SGRE, RiverCap was obligated to remove from several project sites and recycle certain wind turbine blades associated with various wind turbine repowering projects known as the Adair, Elbow Creek, Wildorado, Oliver, Northern Colorado, and Mower projects (the "**2019 Projects**").

13. On September 14, 2021, SGRE and RiverCap, formerly known as RiverCap Ventures, LLC, entered into a separate Master Services Agreement (the "**2021 Agreement**") under which RiverCap was obligated to remove from several project sites and recycle certain wind turbine blades associated with various wind turbine repowering projects known as the Pomeroy, Laurel, Rolling Hills, and Ensign projects (the "**2021 Projects**").

14. On December 5, 2022, SGRE and RiverCap agreed on Purchase Order No. 3000044682 (the "**2022 Agreement**") pursuant to which RiverCap was to perform services for SGRE at the Midway wind farm including removing certain wind turbine components located at the Midway wind farm.

15. Despite RiverCap's agreement to complete its work under the 2019 Agreement by July 25, 2020, RiverCap failed to do so. In fact, RiverCap never completed its work under the 2019 Agreement.

16. RiverCap also failed to meet the work schedule under the 2021 Agreement and, to this day, has not completed the work it is obligated to perform under the 2021 Agreement.

17. SGRE and RiverCap also had disputes concerning RiverCap's failure to perform under the 2022 Agreement.

## II. The Settlement Agreement and RiverCap's Material Breach.

18. After SGRE gave written notice to RiverCap of its material breaches under the various agreements between SGRE and RiverCap and demanded that RiverCap cure its material breaches, SGRE and RiverCap, on December 15, 2023, entered into a Settlement and Release Agreement (the "**Settlement Agreement**"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 1.**

19. The Settlement Agreement was negotiated and executed by Donahue purportedly on behalf of RiverCap.

20. In the Settlement Agreement, RiverCap agreed to complete the following work no later than December 31, 2024:

   a. Recycle all wind turbine blades from the Rolling Hills project (the "**RH Blades**") and deliver to SGRE the corresponding recycling certificates; and

   b. Remove all wind turbine blades from the Mower project (the "**Mower Blades**") from their location in Grand Meadow, Minnesota, and transport all Mower Blades to a location that does not create legal or nuisance issues and storage or disposal in compliance with all applicable laws.

21. RiverCap further agreed in paragraph 4 of the Settlement Agreement that, in the event any legal or nuisance issues or complaints arise, it would relocate the RH Blades and Mower Blades at RiverCap's sole cost within ninety (90) days of becoming aware of the legal or nuisance issues or complaints.

4

22. RiverCap agreed that if it did not complete the work described in paragraph 4 of the Settlement Agreement, SGRE has the right, but not obligation, to take possession of the RH Blades or the Mower Blades, remove such blades from their location and move such blades to any other location, at the sole and absolute discretion of SGRE. RiverCap agreed that it would be liable to SGRE for all costs related to moving and recycling or otherwise processing the RH Blades or Mower Blades, at SGRE's sole and absolute discretion.

23. Pursuant to paragraph 7 of the Settlement Agreement, SGRE agreed that it would transport wind turbine blades from the Oliver project (the "**Oliver Blades**") from North Dakota to RiverCap's Canvus facility in Ohio. In exchange, RiverCap agreed to pay SGRE the total of $161,700 no later than thirty (30) days after SGRE completed delivery of the Oliver Blades to RiverCap's Canvus facility in Ohio. RiverCap also agreed to recycle the Oliver Blades.

A. **RiverCap Fails to Pay for Transportation of the Oliver Blades.**

24. SGRE completed delivery of the Oliver Blades to RiverCap's Canvus facility in Ohio on January 29, 2024. On March 7, 2024, SGRE submitted to RiverCap an invoice for the amount of $161,700 due pursuant to paragraph 7 of the Settlement Agreement (the "**Oliver Blades Invoice**"). A true and correct copy of the Oliver Blades Invoice is attached hereto as **Exhibit 2**.

25. To this day, RiverCap has not paid the Oliver Blades Invoice.

B. **RiverCap Fails to Remove the Mower Blades from Grand Meadows, Minnesota.**

26. On or around February 22, 2024, the city administrator for the city of Grand Meadows, Minnesota, James Christian, contacted Donahue to notify Donahue and RiverCap that the Mower Blades continued to be a nuisance at their location in Grand Meadows, Minnesota and demanded that RiverCap remove the Mower Blades from Grand Meadows, Minnesota. Indeed,

5

Donahue and RiverCap have been on notice from the City of Grand Meadows that the Mower Blades posed a nuisance issue since at least 2022.

27. Despite being placed on notice multiple times that the Mower Blades were a nuisance at their Grand Meadows, Minnesota location—including through the city's administrator and a newspaper article for which Donahue was interviewed—RiverCap never made any efforts to remove the Mower Blades from Grand Meadows, Minnesota.

28. Accordingly, on or around October 9, 2024, SGRE began the process of removing the Mower Blades from the city of Grand Meadows, Minnesota so that they may be appropriately recycled.

29. SGRE completed the removal and recycling of the Mower Blades in October 2024 at a cost to SGRE of no less than $1,100,000.00.

30. SGRE has not been compensated for its costs in removing the Mower Blades from Grand Meadows, Minnesota and recycling the Mower Blades.

**C.     RiverCap's Anticipatory Breach of its Obligation to Recycle the RH Blades.**

31. Despite agreeing to complete the recycling of all RH Blades by no later than December 31, 2024, RiverCap has taken no steps to complete such recycling and it has no intention (and never had any intention) to complete such work.

32. On or around August 9, 2024, Donahue publicly stated that RiverCap was out of business since 2022 and had no ability to perform any work pertaining to the transportation or recycling of wind turbine blades.

33. Indeed, in a newspaper article titled "'Seriously, this sucks': How a small Minnesota town was left with a giant pile of wind turbine blades" and published on August 9, 2024 in The Minnesota Star Tribune, Donahue is quoted as stating that "he and other top leaders at RiverCap left and the company went out of business" in 2022. Donahue is further quoted as

6

indicating that, as a result of RiverCap going out of business, he and another former RiverCap worker "helped create a new venture called Canvus that took over responsibility for the blades in 2022."

34. Yet, Donahue, in that same August 9, 2024 article, is also quoted as stating that even "Canvus doesn't have enough money to move the blades either…." In a subsequent article published on September 5, 2024 in The Minnesota Star Tribune, Donahue is quoted as saying that Canvus went out of business in August 2024.

35. On September 26, 2024, SGRE sent a demand letter to RiverCap declaring it in anticipatory breach of its obligations under Paragraph 4(a) of the Settlement Agreement. RiverCap never responded to SGRE's September 26, 2024 demand letter. A true and correct copy of the demand letter is attached hereto as **Exhibit 3.**

36. Through Donahue's own words and its own actions and inactions, RiverCap has repudiated its obligations under Paragraph 4(a) of the Settlement Agreement, and it is evident that RiverCap has breached its obligations under the Settlement Agreement and has no intention or capacity to perform any of its remaining obligations under the Settlement Agreement.

**III.     Canvus and Noblewins are RiverCap's Successors.**

37. Upon information and belief, RiverCap, Canvus, and Noblewins share the same principal place of business at 18500 Lake Road, Rocky River, Ohio 44116.

38. According to Donahue's own recent public statements, and unbeknownst to SGRE, RiverCap (and RiverCap Holdings as its sole parent company) went out of business in 2022. Also according to Donahue in recent public statements, that same year, Canvus took over RiverCap's business including, without limitation, responsibility over the Mower Blades that RiverCap was responsible for moving from Grand Meadows, Minnesota and recycling.

7

39. In fact, Canvus became the successor of RiverCap because its entire business model is premised on RiverCap's business model—i.e., obtaining wind turbine generator blades to recycle them—and its assets, equipment and customers were all received from RiverCap.

40. Like RiverCap, Canvus is controlled and dominated by Kowalski and Donahue.

41. Upon information and belief, Kowalski, Donahue, and Johnson improperly transferred all the assets of RiverCap to Canvus in an effort to fraudulently avoid RiverCap's long line of creditors that include SGRE. In short, in 2022, RiverCap became insolvent and incapable of meeting its obligations. Accordingly, Kowalski, Donahue, and Johnson used Canvus as the vehicle to attempt to continue RiverCap's business without RiverCap's obligations.

42. When Canvus also became insolvent and incapable of meeting its obligations, Kowalski, Donahue, and Johnson repeated the same fraudulent scheme to avoid creditors. They created Noblewins on or around August 20, 2024.

43. Indeed, by Donahue's own public admissions, all assets of Canvus including its book of business and intellectual property, were transferred from Canvus to Noblewins. Upon information and belief, the assets of Canvus were transferred to Noblewins without Noblewins paying fair market value and the transfer is nothing more than a continuing fraudulent attempt to avoid Canvus' and RiverCap's liabilities including their liabilities to SGRE.

44. Noblewins' website, www.noblewins.com, advertises the same products and services that Canvus advertised in its website, www.gocanvus.com.

45. Noblewins is also controlled and dominated by Donahue and Kowalski.

46. Rather than undergoing a proper wind up and dissolution process, Donahue, Kowalski, and Johnson stripped RiverCap of its assets and business and transferred it to Canvus. Then, when Canvus also became insolvent or unable to meet its obligations, they repeated the same

8

scheme transferring Canvus's assets to Noblewins instead of undergoing a proper process of wind up and dissolution. All of the foregoing has been in an effort to avoid a long line of creditors, that include SGRE, after Donahue's and Kowalski's failed business ventures.

47. Thus, Canvus and Noblewins are merely a continuation of RiverCap. Moreover, the transfers of assets from RiverCap to Canvus and from Canvus to Noblewins were done fraudulently for the purpose of escaping liability to each entities' creditors including SGRE.

### IV. Defendants are all One and the Same and Donahue, Kowalski, and Johnson are Personally Liable to SGRE.

48. Donahue and Kowalski are personally liable to SGRE because RiverCap, RiverCap Holdings, Canvus, and Noblewins are their alter egos and/or the corporate veil should be pierced at each level to impose liability upon Donahue and Kowalski.

49. Donahue and Kowalski, with the aid of Johnson as well, had complete domination and control over RiverCap and RiverCap Holdings to such an extent that the companies had no separate mind, will, or existence of their own. Indeed, this is evident by the transfer of assets and business from RiverCap to Canvus and from Canvus to Noblewins with no legitimate purpose or payment of fair market value. Throughout this process, Donahue, Kowalski, and Johnson disregarded the corporate formalities and processes including, without limitation, failing to properly wind up and dissolve RiverCap, RiverCap Holdings, and Canvus. Instead, Donahue, Kowalski, and Johnson simply abandoned each entity and transferred operations to a new entity— now, Noblewins.

50. RiverCap Holdings as the sole parent company of RiverCap is merely another shell in Donahue's and Kowalski's game whose only purpose is to shield assets, not pay debts, including the debts owed to SGRE, and avoid obligations owed to third parties, including SGRE. RiverCap Holdings has no separate mind, will, or existence from either RiverCap or the ultimate individuals

in control: Donahue and Kowalski. In other words, RiverCap and RiverCap Holdings have always been one and the same.

51. RiverCap, RiverCap Holdings, Canvus, and Noblewins are a mere façade for the operations of Donahue and Kowalski. Donahue and Kowalski, with the aid of Johnson, create new entities or use other entities for no purpose other than attempting to shield assets, not pay debts, including the debts owed to SGRE, and avoid obligations owed to third parties, including SGRE.

52. Indeed, while Donahue has publicly claimed to have been "fired" by Kowalski from Canvus, he also admits that just five (5) days later he created Noblewins and claims to have transferred all of Canvus' assets to Noblewins. That could only have occurred if the companies are a mere façade for Donahue's and Kowalski's operations and they are completely controlled and dominated by Donahue and Kowalski with the aid of Johnson.

53. Moreover, while RiverCap, RiverCap Holdings, and Canvus are said to be out of business, Donahue claims to have possession of the Oliver Blades that SGRE transported to Canvus's facility in Ohio and the RH Blades. Donahue is attempting to use the Oliver Blades and RH Blades for Noblewins' business and shockingly requested that SGRE move the Oliver Blades (again) and the RH Blades from their current location in Ohio but allow him to retain parts from the Oliver Blades that he can use for Noblewins.

54. Donahue should also be held personally liable for RiverCap's liability to SGRE under the Settlement Agreement because Donahue executed the Settlement Agreement knowing (and without disclosing to SGRE) that RiverCap was out of business, would not be able to perform, and had no present intention of performing. The Settlement Agreement was executed in December 2023, yet Donahue admits that RiverCap went out of business as early as 2022.

55. Donahue, thus, fraudulently induced SGRE to enter into the Settlement Agreement because he never disclosed to SGRE that RiverCap was out of business as of 2022. Donahue failed to disclose that material fact to SGRE because he knew that if he did, then SGRE would pursue its rights and claims instead of entering into the Settlement Agreement. Donahue led SGRE to believe that RiverCap had the present intention and capacity to perform under the Settlement Agreement all in an effort to fraudulently induce SGRE to enter into the Settlement Agreement. Donahue also fraudulently induced SGRE to move the Oliver Blades to RiverCap's Canvus facility in Ohio so that he could continue his business through Canvus while attempting to escape from RiverCap's liabilities to SGRE. SGRE would not have entered into the Settlement Agreement if it had known that RiverCap was out of business as of 2022.

56. Under Ohio law, an officer, director, or shareholder is personally liable for contracts entered into that are not in the act of winding up corporate affairs of a dissolving corporation. RiverCap never went through the proper wind up and dissolution process in 2022 or 2023. The Settlement Agreement was not entered into as an act in connection with the proper wind up and dissolution of RiverCap. Accordingly, under Ohio law, Donahue is also personally liable under the Settlement Agreement. *See generally Chatman v. Day*, 455 N.E.2d 672, 674 (Ohio Ct. App. 1982) (describing general rule that "upon the corporation's death, those officers, directors or shareholders who continue to engage in corporate business other than winding up the affairs of the company will be held personally liable for such activity.").

57. Johnson should also be held personally liable for RiverCap's liability to SGRE under the Settlement Agreement because in his position as CFO of RiverCap and RiverCap Holdings, Johnson aided Donahue in fraudulently inducing SGRE to enter into the Settlement Agreement.

58. Indeed, Johnson was aware that SGRE had asserted demands and claims against RiverCap for its breaches of the 2019, 2021, and 2022 Agreements and that RiverCap and SGRE were in the process of attempting to resolve those disputes through the Settlement Agreement. Johnson was aware of this dispute because he was the designated contact for receiving notices under RiverCap's and SGRE's agreements and he, in fact, received and responded to SGRE's notices that RiverCap was in material breach under the 2019, 2021, and 2022 Agreements. Notwithstanding the fact that RiverCap was insolvent and/or unable to carry out its business in 2023, Johnson did not disclose that material fact to SGRE in an effort to induce SGRE to enter into the Settlement Agreement and forego its ability to pursue claims against RiverCap in 2023. Upon information and belief, Kowalski aided Donahue and Johnson in fraudulently inducing SGRE to enter into the Settlement Agreement.

59. All conditions precedents to bringing this action have been performed or waived.

## **COUNT I – BREACH OF CONTRACT**
(Against all Defendants except Canvus and Noblewins)

60. SGRE hereby re-alleges and incorporates by reference paragraphs 1-59 as if fully restated herein.

61. The Settlement Agreement is a valid and enforceable contract between SGRE and RiverCap.

62. RiverCap breached the Settlement Agreement by failing to pay SGRE for transportation of the Oliver Blades and failing to move the Mower Blades after being on notice of nuisance complaints regarding the Mower Blades.

63. RiverCap anticipatorily breached the Settlement Agreement because it has made clear it has no intent and/or ability to complete recycling of all RH Blades as required by the Settlement Agreement and the 2021 Agreement.

64. As a direct and proximate result of RiverCap's breaches of the Settlement Agreement, SGRE has suffered damages including, but not limited to, over $1,200,000 in costs for moving and disposing the Mower Blades and transporting the Oliver Blades.

65. As a result of RiverCap's breaches of the Settlement Agreement, RiverCap is also liable to SGRE for the following costs and damages suffered by SGRE:

   a. $139,000 pursuant to paragraph 9 of the Settlement Agreement and relating to SGR's settlement of RiverCap's outstanding judgment in favor of and other debt owed to RiverCap's subcontractor, Continental Crane and Equipment Services, LLC, including the total cost SGRE expended to settle said judgment and other debts, all cash reimbursements, and reasonable attorneys' fees and costs;

   b. $2,392,227.30 pursuant to paragraph 10 of the Settlement Agreement and relating to the recycling of the RH Blades, the wind turbine blades from the Ensign project, and the wind turbine blades from the Laurel project that were not recycled by RiverCap and were located at the facilities of Veolia ES Technical Solutions, LLC in Missouri, plus reasonable attorneys' fees and costs SGRE expends in enforcing its rights under paragraph 10 of the Settlement Agreement;

   c. $633,000 pursuant to paragraph 12 of the Settlement Agreement and relating to SGRE being double invoiced by RiverCap and which were paid by SGRE, plus reasonable attorneys' fees and costs SGRE expends in enforcing its rights under paragraph 12 of the Settlement Agreement; and

   d. $96,000 pursuant to paragraph 13 of the Settlement Agreement and relating to RiverCap's delays in the performance of its work at the Rolling Hills project, plus

13

reasonable attorneys' fees and costs SGRE expends in enforcing its rights under paragraph 13 of the Settlement Agreement.

66. Despite demands by SGRE, RiverCap has refused and failed to compensate SGRE for any amounts due and owing under the Settlement Agreement or the costs and damages suffered by SGRE as a result of RiverCap's breaches of the Settlement Agreement. SGRE continues to suffer damages as a direct and proximate result of RiverCap's breaches of the Settlement Agreement, the precise amount of which will be proven at trial.

67. RiverCap Holdings is liable for RiverCap's liabilities under the Settlement Agreement because it is merely the alter ego of RiverCap and/or the corporate veil should be pierced to reach RiverCap Holdings.

68. Donahue and Kowalski are liable for RiverCap's liabilities under the Settlement Agreement because RiverCap and RiverCap Holdings are their mere alter egos and/or the corporate veil should be pierced to impose liability upon Donahue and Kowalski.

69. Johnson should be held liable for RiverCap's liabilities under the Settlement Agreement because Johnson aided in the fraudulent inducement of SGRE. Johnson was aware of and participated in the discussions between SGRE and RiverCap concerning RiverCap's material breaches under the 2019, 2021, and 2022 Agreements. Johnson was also aware and participated in the discussions leading to the preparation of the Settlement Agreement. However, Johnson—as the CFO of RiverCap—knew that RiverCap was out of business and had no present intention to perform under the Settlement Agreement. But Johnson never disclosed this material fact to SGRE because he knew that if he did, then SGRE would not enter into the Settlement Agreement. Johnson, thus, in his capacity as CFO of RiverCap participated in the fraudulent scheme to induce SGRE to enter into the Settlement Agreement.

WHEREFORE, Plaintiff, SGRE, demands entry of judgment against RiverCap, RiverCap Holdings, Donahue, Kowalski, and Johnson, jointly and severally, finding that each is responsible for all amounts owed to SGRE by RiverCap, plus pre and post-judgment interest, and further demands such other relief as the Court deems just and proper.

### COUNT II – SUCCESSOR LIABILITY
(Against Canvus and Noblewins)

70. SGRE hereby re-alleges and incorporates by reference paragraphs 1-59 as if fully restated herein.

71. Canvus is liable to SGRE as successor to RiverCap for RiverCap's breaches of the Settlement Agreement and all amounts owed to SGRE.

72. Noblewins is liable to SGRE as successor to RiverCap and/or Canvus for RiverCap's breaches of the Settlement Agreement and all amounts owed to SGRE thereunder.

73. Canvus is as a mere continuation of RiverCap. While the name of the business changed, the substance did not, and there is a continuity of control, location, management, personnel, and business operations from RiverCap to Canvus. Moreover, upon information and belief, RiverCap's assets were fraudulently transferred to Canvus for the purpose of attempting to escape RiverCap's liabilities.

74. Noblewins was created as a mere continuation of RiverCap and Canvus. While the name of the business changed, the substance did not, and there is a continuity of control, location, management, personnel, and business operations from RiverCap to Canvus and from Canvus to Noblewins.

75. Noblewins was also created in a fraudulent effort to avoid the liabilities of its predecessors, RiverCap and Canvus, and is part of the conscious effort by Donahue and Kowalski,

15

aided by Johnson (and possibly others), to defraud, hinder, and delay SGRE from obtaining payment of the debts owed to it by RiverCap.

WHEREFORE, Plaintiff, SGRE, demands entry of judgment against Canvus and Noblewins, as the successors to RiverCap, finding Canvus and Noblewins responsible for all amounts owed to SGRE by RiverCap, plus pre and post-judgment interest, and further demands such other relief as the Court deems just and proper.

Dated: January 13, 2025

Respectfully submitted,

*s/ Cory N. Barnes*
Cory N. Barnes (0097817)
**BAKER & HOSTETLER LLP**
127 Public Square, Ste. 2000
Cleveland, OH 44114
Telephone: 216.621.0200
Email: cbarnes@bakerlaw.com

Robert W. Thielhelm, Jr. (*pro hac vice application forthcoming*)
Florida Bar No.: 889679
Yameel L. Mercado Robles (*pro hac vice application forthcoming*)
Florida Bar No. 1003897
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: rthielhelm@bakerlaw.com
ymercadorobles@bakerlaw.com

*Attorneys for Siemens Gamesa Renewable Energy, Inc.*